**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DAMON'S RESTAURANTS, INC.,**

          **Plaintiffs,**

      **v.**

**EILEEN K INC., *et al.*,**

          **Defendants.**

      **Case No. C2 04 1028**

      **JUDGE MICHAEL H. WATSON**

      **Magistrate Judge Norah McCann King**

## REPORT AND RECOMMENDATION

This matter is before the Court on the *Motion of Plaintiff Damon's Restaurants, Inc. for Preliminary Injunction Terminating Rockaway and Scranton Franchise Agreements* ("*Plaintiff's Motion for Preliminary Injunction*"), Doc. No. 90, and on the *Motion of Plaintiff Damon's Restaurants, Inc. for an Order Requiring Defendants to Show Cause Why They Should Not Be Held in Contempt of the Court's November 17, 2004 Agreed Order* ("*Plaintiff's Motion for Contempt*"), Doc. No. 91.  Pursuant to 28 U.S.C. § 636(b), these two motions were referred to the undersigned for evidentiary hearing and report and recommendation.  Doc. No. 95.  An evidentiary hearing was held on June 27, 2006, and based on that hearing and the parties' pre- and post-hearing briefs, the Court **RECOMMENDS** that *Plaintiff's Motion for Contempt* be **GRANTED** and that *Plaintiff's Motion for Preliminary Injunction* be **DENIED** without prejudice to renewal should defendants not affirmatively establish, within thirty (30) days, satisfaction of the recommended remedy for their contempt.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

On November 7, 1996, the parties entered into a franchise agreement to operate a

Damon's restaurant on Concorde Drive, Dupont, Pennsylvania ("Scranton restaurant").  *Exhibit*

*A* attached to *Complaint*.  On August 27, 2002, the parties entered into a franchise agreement for

a Damon's restaurant at 11 Green Pond Road, Rockaway Township, New Jersey ("Rockaway

restaurant").  *Exhibit I* attached to *Complaint*.

On October 22, 2004, plaintiff filed the *Complaint* in this action, seeking injunctive and

declaratory relief terminating the franchise agreements governing the Scranton and Rockaway

restaurants because defendants allegedly repeatedly and successively acted in breach of the

agreements. Should the franchise agreements be terminated, defendants will thereafter be

required to cease operating as Damon's franchise and using Damon's trademarks in violation of

the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

On October 29, 2004, plaintiff filed a motion for preliminary injunctive relief with regard

to the Scranton restaurant.  Doc. No. 6.  Then, on December 9, 2004, plaintiff filed a motion for

injunctive relief with regard to the Rockaway restaurant.  Doc. No. 32. Certain aspects of these

motions for injunctive relief were resolved by a November 17, 2004, *Agreed Order* ("*First*

*Agreed Order*") and a December 27, 2004, *Agreed Order* ("*Second Agreed Order*").  Doc. Nos.

26, 38.  In the *First Agreed Order*, the parties agreed and the Court ordered, *inter alia*, that the

parties would "abide by each parties' rights and obligations under the respective Franchise

Agreements . . . ."  *First Agreed Order* at 2.  Also, the parties agreed and the Court ordered that

defendants offer and serve only Damon's approved food products.  *Id.* 1-2.

In the *Second Agreed Order*, the parties agreed and the Court ordered defendants to

2

"accurately report to [plaintiff] all sales made at the Scranton (Pennsylvania) Restaurant and Rockaway (New Jersey) Restaurant and pay to Damon's all royalties and production fund fees based on gross sales at these restaurants." *Second Agreed Order* at 1.

After an evidentiary hearing and consideration of the parties' briefs, the Court issued an *Opinion and Order* on October 7, 2005 ("*October 7, 2005, Opinion and Order*"), denying the remaining portions of plaintiff's motions for injunctive relief.  Doc. No. 81.  In the *October 7, 2005, Opinion and Order*, the Court set out the following facts:

> 1.    *Scranton Restaurant*
>
> Plaintiff maintains that since the execution of the Scranton Restaurant Franchise Agreement, Eileen K defaulted and has been otherwise deficient on numerous occasions.  Said acts involved one or more incidents of a failure to pay royalties and production fees, and other acts of failing to comply with the Franchise Agreement and operating guidelines by, *inter alia*, offering and serving unapproved food products.  Plaintiff maintains from 1998 to the present it issued six Notices of Default, sent a number of letters and e-mails and, conducted several on site inspections, all of which placed Eileen K on notice of the numerous alleged violations and defaults.
>
> On October 19, 2004, Plaintiff served Eileen K with a Notice of termination of the Scranton Restaurant Franchise Agreement.
> . . .
>
> 2.    *Rockaway Restaurant*
>
> Similar to the Scranton Restaurant, Plaintiff alleges, since the execution of the Rockaway Restaurant Franchise Agreement, Eileen K committed numerous acts of default and deficiency, including failure to pay royalties and production fees and failure to comply with the Franchise Agreement and operating guidelines by, *inter alia*, offering and serving unapproved food products.  As such, Plaintiff sent a Notice for Default to Eileen K.  Subsequently, on October 19, 2004, Plaintiff served Eileen K with a Notice of Termination for the Rockaway Restaurant Franchise Agreement.

*Id.* at 2-3.

On April 11, 2006, plaintiff again served defendants with notices of termination of the

franchise agreements for the Scranton and Rockaway restaurants.  *June 27, 2006, Hearing Transcript* ("*Hearing Tr.*") *Exhibits 91, 92*.

On May 9, 2006, plaintiff filed *Plaintiff's Motion for Preliminary Injunction*, requesting the following injunctive relief:

1.  Terminating the Franchise Agreements between Damon's and Defendant Eileen K, Inc. (hereinafter "Eileen K") relating to the Scranton and Rockaway Restaurants and ordering Defendants to immediately cease all activity relative to operation of the restaurants, and to undertake all actions necessary and required by the Franchise Agreements to decharacterize the restaurants and comply with §XVII(A)(1)-(8) of the Franchise Agreements, and to cease all operations as a Damon's franchisee; and further that Defendants be enjoined from using confidential, trade secret, and/or proprietary information of Damon's, and to be enjoined from using the trademark and/or trade dress of Damon's, or trademarks or trade dress confusingly similar to that of Damon's for any promotion, advertising, offering, or the rendering or offering of any restaurant services to the public;

2.  Ordering Defendants to properly terminate the restaurants, as Damon's Restaurants, ordering the preservation of all financial records and Point of Sale records (both electronic and hardcopy), and ordering an audit of the sales for an accounting of amounts due and owing relative to the operation of the restaurant through the termination of the Franchise Agreements;

3.   Prohibiting Defendants from violating 15 U.S.C. §1125(a), *et seq*. [Section 43 of Lanham Act, 15 USCS §§ 1051 *et seq.*,  creates statutory tort of false representation of goods in commerce] ;

4.  Enjoining Defendants, their agents, servants, employees, attorneys and all those persons in active concert or participation with them from using the trademark "Damon's" or any confusingly similar designation, alone or in combination with other words, as a trademark, trade name component, domain name, or otherwise to market, advertise or identify restaurant services, and related products and services;

5.  Enjoining Defendants from infringing Damon's mark;

6.  Enjoining Defendants from unfairly competing with Damon's in any manner whatsoever;

4

7.     Enjoining Defendants from causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of Damon's symbols, labels or forms of advertisement;

8.     Requiring that Defendants file with the Court and serve on Damon's within thirty (30) days after the injunction is issued a written report under oath setting forth in detail the manner and form in which they have complied with the injunction;

9.     Requiring Defendants to deliver up and destroy all literature, advertising, and other material bearing the infringing designation;

10.     Requiring Defendants to take any and all steps necessary to insure that their agents do not sell or offer for sale restaurant services and related products/services, bearing said infringing mark; and

11.     Requiring Defendants to account for and pay to Damon's any and all fees due under the Franchise Agreements until the date of cessation of operation of the restaurants.

*Plaintiff's Motion for Preliminary Injunction* at 8-9. Additionally, on May 9, 2006, plaintiff filed *Plaintiff's Motion for Contempt*, based on defendants' alleged violations of the *First Agreed Order*. Doc. No. 91. Defendants failed to respond to either of these motions within rule. *See* S.D. Ohio L.R. 7.2(a)(2).

On June 22, 2006, plaintiff filed *Plaintiff Damon's Restaurant Inc.'s Supplemental Brief in Support of its Motions for Preliminary Injunction and Contempt*, alleging that defendants had still not paid royalties since the filing of *Plaintiff's Motion for Preliminary Injunction*. Doc. No. 99.

On June 26, 2006, plaintiff filed *Plaintiff Damon's Restaurant Inc.'s Second Supplemental Brief in Support of its Motions for Preliminary Injunction and Contempt*, based on defendants' alleged violations of the *Second Agreed Order*. Doc. No. 100.

On June 27, 2006, an evidentiary hearing on *Plaintiff's Motion for Contempt* and on

5

*Plaintiff's Motion for Preliminary Injunction* was held. *See* Doc. No. 102. Carl Howard, President and Chief Operating Officer of Damon's International, testified on behalf of plaintiff and Brian Maloney, a member of the partnership between defendants, Eileen K, DuPont Airport, Inc. and Trinity Road Restaurants Association, LLC, testified on behalf of defendants. *Hearing Tr.* at 9, 39. All parties were represented by counsel at the hearing.

On July 14, 2006, defendants filed their post-hearing brief ("*Defendants' Post-Hearing Brief*"), Doc. No. 103, and on July 28, 2006, plaintiff filed its response to defendants' post-hearing brief ("*Plaintiff's Response to Defendants' Post-Hearing Brief*"), Doc. No. 104. Plaintiff's motions are now ripe for consideration.

## II.    ANALYSIS

### A.    Challenge to Certain Documents Submitted at the Evidentiary Hearing

At the June 27, 2006, evidentiary hearing, defendants objected on hearsay grounds to four documents proffered as exhibits by plaintiff: *Exhibits 93* and *94*, e-mails purportedly received by plaintiff from customers with various complaints about the Rockaway restaurant; *Exhibits 95* and *96*, e-mails purportedly received by plaintiff from North Star Foodservice (previously U.S. Foods) indicating that it stopped delivering approved meat products to the Scranton and Rockaway restaurants on April 4, 2006. The Court indicated at the hearing that it would take defendants' objections under advisement and would rule on the objections in this *Report and Recommendation*.

In their post-hearing brief, defendants did not address their objections to these four exhibits. In plaintiff's response to the post-hearing brief, however, plaintiff correctly notes that the Federal Rules of Evidence generally do not apply to preliminary injunction hearings.

6

*Plaintiff's Response to Defendants' Post-Hearing Brief* at 7.  The United States Court of Appeals

for the Sixth Circuit has not explicitly stated whether hearsay evidence may be considered in the

context of a preliminary injunction hearing.  *In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 n.4

(6th Cir. 1985) ("The parties assume that the Federal Rules of Evidence are fully applicable to a

hearing on a motion for preliminary injunction. We express no opinion on this question. *But see*

11 C. Wright & A. Miller, Federal Practice and Procedure § 2949 (1973) (affidavits may be used

to support preliminary injunction; 'trial court should be allowed to give even inadmissible

evidence some weight')").  This Court, however, and other district courts within this circuit have

considered such evidence, as have numerous other circuit courts.  *See United States v. O'Brien*,

836 F. Supp. 438, 441 (S.D. Ohio 1993) (J. Beckwith); *Family Trust Fund., Inc. v. Wolnitzek*,

345 F. Supp. 2d 672, 699 n.10 (E.D. Ky. 2004); *Performance Abatement Servs. v. Lansing Bd. of

Water & Light*, Case No. 5-98-CV-70, 2001 U.S. Dist. LEXIS 2891, *5 (W.D. Mich. Mar. 6,

2001); *Toledo Area AFL-CIO Council v. Pizza*, 898 F. Supp. 554, 558 -59 (N.D. Ohio 1995);

*F.T.C. v. Renaissance Fine Arts, Ltd.*, Case No. 1:94CV0157, 1994 WL 543048, at *8 (N.D.

Ohio Sept. 1, 1994); *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir.

2004); *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *Ty, Inc. v. GMA

Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Levi Strauss & Co. v. Sunrise Int'l

Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Sierra Club, Lone Star Chapter v. FDIC*, 992

F.2d 545, 551 (5th Cir. 1993); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984);

*cf. University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("a preliminary injunction is

customarily granted on the basis of procedures that are less formal and evidence that is less

complete than in a trial on the merits"); 11A C. Wright & A. Miller, Federal Practice and

Procedure § 2949 (2d ed. 1995) ("it is not surprising that in practice affidavits usually are accepted on a preliminary injunction motion without regard to the strict standards of Rule 56(e), and that hearsay evidence also may be considered").

After analyzing the relevant case law, it appears appropriate that this Court accord some weight to *Exhibits 93, 94, 95* and *96* at this stage of the proceedings, even assuming that they are properly characterized as hearsay.

However, the Court concludes that *Exhibits 93* and *94* are not properly so characterized, because the statements within those documents are not "offered ... to prove the truth of the matter asserted," *i.e.*, the restaurants were out of many items, had no working credit card machine, were dirty etc. Fed. R. Evid. 801©). Instead, the e-mails were offered to show merely that plaintiff received complaints from customers about the defendants' operations.

Moreover, the Court has not relied in any way on *Exhibits 95* and *96* because Mr. Maloney testified on behalf of defendants that defendants had in fact stopped receiving approved meat products from North Star Foodservice at the beginning of April 2006 for non-payment of amounts due.

### B.    Plaintiff's Motion for Preliminary Injunction[1]

Plaintiff moves for a preliminary injunction under Fed. R. Civ. P. 65. The decision whether or not to issue a preliminary injunction falls within sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). As Judge Watson stated in his *October 7, 2007, Opinion and Order*:

---

[1]Much of the evidence, and the Court's analysis and evaluation of the evidence, also pertains to *Plaintiff's Motion for Contempt*.

> The party seeking the injunction must establish its case by clear and convincing evidence. *Garlock, Inc. v. United Seal, Inc.,* 404 F.2d 256, 257 (6th Cir. 1968); *Deck*, 29 F. Supp.2d at 433 (N.D. Ohio 1998); *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co.,* 109 Ohio App. 3d 786, 792-93 (1996). To meet this burden, the plaintiff's evidence must more than outweigh the evidence opposed to it. The plaintiff's evidence must persuade the court that its claims are highly probable, *Colorado v. New Mexico,* 467 U.S. 310, 316 (1986), or create a firm belief or conviction in the facts the plaintiff seeks to establish, *see, e.g., Lansdowne v. Beacon Journal Pub. Co.,* 32 Ohio St. 3d 176, 180-81 (1987).

*October 7, 2007, Opinion and Order* at 4.

A preliminary injunction is an extraordinary remedy that should be granted only after the Court has carefully considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*), quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). When considering these factors, the district court should balance each factor against the others to arrive at its ultimate determination. *Id.* These factors are not prerequisites to injunctive relief; rather, they are factors that the Court must balance. *In re Delorean Motor Co.*, 755 F.2d at 1229; *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber*, 322 F. Supp.2d 902, 918 (S.D. Ohio 2004) (J. Sargus) (same).

### 1.    *Success on the merits*

Plaintiff argues that there is a strong likelihood that it will be successful in proving that

defendants are in breach of the franchise agreements that govern the Scranton and Rockaway

restaurants, thereby entitling it to the declaratory and injunctive relief that it seeks in this action.

In the *October 7, 2005, Opinion and Order*, Judge Watson concluded that plaintiff had failed to

establish a substantial likelihood of probability of success on the merits:

> Turning to the first element, without stating the Court's ultimate opinion on the
> merits of the case, Plaintiff fails to establish a substantial likelihood or probability
> of success on the merits. The evidence presented at the preliminary injunction
> hearing revealed, that while Defendants failed to timely pay royalty payments,
> they subsequently paid the royalty payments. Plaintiff either accepted the royalty
> payments or, at a minimum, did not return them. . . . Further, Defendants
> presented testimony that they have been current on their royalty payments since
> paying them by electronic funds transfer. Additionally, questions of fact exist as
> to whether Defendants were serving unapproved foodstuffs . . . .

*October 7, 2005, Opinion and Order* at 4-5.

However, since the issuance of the *October 7, 2005, Opinion and Order*, circumstances

have changed significantly. At the June 27, 2006, evidentiary hearing, Mr. Maloney conceded

that defendants have failed to timely pay royalty and production fund payments for the past year.

*Hearing Tr.* at 50. Indeed, defendants have paid absolutely no royalty and production fund

payments to plaintiffs, timely or otherwise, since August 2005. *Id.* Failure to pay royalties is a

violation of Section IV of the franchise agreements and the *Second Agreed Order*. Doc. No. 38;

*Exhibits A, I* attached to *Complaint*.

Mr. Maloney attempted to excuse this default by testifying that he was verbally told by

Bill Burke, allegedly a representative of plaintiff, that defendants need not pay royalties.

*Hearing Tr.* at 50. Mr. Burke denies that he did so and in fact represents that he had no authority

to do so. *Affidavit of Bill Burke* attached as *Exhibit B* to *Plaintiff's Motion for Preliminary*

*Injunction*. In any event, however, Section XXIV of both franchise agreements provides that "no

10

amendment, change or variance from this Agreement shall be binding on either party unless executed and delivered in writing." *Exhibits A, I* to *Complaint*; *Hearing Tr.* at 51-2. Thus, any such attempted modification of defendants' obligations in this regard was ineffective and defendants were unreasonable in acting – or failing to act – in reliance on such attempted modification.

Further, although Judge Watson found an issue of fact with regard to the serving of unapproved foodstuffs, plaintiff has now offered persuasive evidence that defendants have been serving unapproved foodstuffs at the Scranton and Rockaway restaurants. On July 13, 2006, Mr. Howard and Ray Ratliff, plaintiff's Franchise Business Consultant,[2] visited and inspected the Scranton restaurant and discovered that unapproved meat products were being served. *Affidavit of Ray Ratliff* attached as *Exhibit A* to *Plaintiff's Motion for Preliminary Injunction*. Also, Mr. Maloney conceded at the evidentiary hearing that, because defendants failed to pay North Star Foodservice, North Star ceased delivering approved food products to defendants' restaurants in April 2006. *Hearing Tr.* at 47.

However, Mr. Maloney insisted that defendants still serve only Damon's-approved foodstuffs by purchasing it from other Damon's restaurants, some located in states other than the states in which the Scranton and Rockaway restaurants are located. *Id.* at 40, 47-48. Notwithstanding the fact that this issue has featured prominently in the *Complaint*, in plaintiff's first and second motions for preliminary injunctions, in the *First Agreed Order* and in *Plaintiff's Motion for Preliminary Injunction*, defendants offered no documentation or other corroboration

---

[2]A Damon's Franchise Business Consultant travels to different Damon's franchise restaurants to observe the businesses operations, including the cleanliness of the restaurant, the quality of the food and the hospitality of the staff. *Hearing Tr.* at 23.

of this testimony. The Court places little credence in Mr. Maloney's uncorroborated testimony. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 500 (1984) (it is the district court's prerogative, and, indeed, its duty, to selectively discount testimony as it weighs conflicting viewpoints and adjudicates the facts). The evidence before the Court compels the conclusion that defendants have been and are currently serving unapproved foodstuff in the Scranton restaurant and in the Rockaway restaurant when it was open for business. Failure to serve approved food is a violation of Section XVI(4)(a) of the franchise agreements and of the *First Agreed Order*. Doc. No. 26; *Exhibits A, I* attached to *Complaint*.

In addition to the changes related to royalty and production fund payments and the food served by defendants since the *October 7, 2005, Opinion and Order*, the record now before the Court includes the following evidence supportive of plaintiff's request for injunctive relief:

First, defendants admit that they have failed to report sales to plaintiff, which is a violation of Sections IV(A) and (B) of the franchise agreements and of the *Second Agreed Order*. Doc. No. 38; *Exhibits A, I* attached to *Complaint*. Defendants have not reported sales from the Scranton restaurant since January 2006. *Affidavit of Fara Palmer*[3] ¶ 3 attached to *Plaintiff's Motion for Preliminary Injunction*; *Hearing Tr.* at 9-14; *Hearing Tr. Exhibit 90*. Defendants also failed to report sales from the Rockaway restaurant on October 2, 2005, February 5, 2006, March 19, 2006, March 26, 2006, April 2, 2006 and April 16, 2006. *Affidavit of Fara Palmer* ¶ 4 attached to *Plaintiff's Motion for Preliminary Injunction*; *Hearing Tr.* at 9-14; *Hearing Tr. Exhibit 89*.

---

[3]Ms. Palmer is the purchasing coordinator for Damon's Restaurants, Inc. *Affidavit of Fara Palmer* ¶ 2.

Mr. Maloney does not deny that defendants failed to report sales but, instead, merely testified that he was unaware that plaintiff had not received the reports. *Hearing Tr.* at 52. He represents that the reports had been prepared and could not explain why plaintiff had not received those reports. *Id.* at 53. Mr. Maloney further testified that, had he been notified that plaintiff had not received the reports, he would "have had them sent out immediately." *Id.* The Court declines to credit Mr. Maloney's testimony considering that he had in fact been notified on April 11, 2006, that plaintiff had not received sales reports and yet did nothing to remedy the situation for over two months, *i.e.*, the time between the date Mr. Maloney claims he became aware of the reporting default (April 11, 2006) and the date he testified at the evidentiary hearing before this Court (June 27, 2006). *Id.*; *Hearing Tr. Exhibit 92*. Mr. Maloney even failed to bring the alleged reports to the evidentiary hearing. The Court finds by clear and convincing evidence that defendants have failed to report all sales.

Second, Mr. Howard, plaintiff's president and CEO, testified that plaintiff did not receive a request, or even a notice, that defendants planned to close the Rockaway Restaurant. *Hearing Tr.* at 22, 57, which Mr. Maloney concedes has been closed at least temporarily. The franchise agreement relating to that restaurant forbids the unilateral closing of the restaurant and expressly provides for closing only upon plaintiff's prior written approval. *Exhibit I* attached to *Complaint*. Mr. Maloney testified that, on the day before he closed the Rockaway restaurant, he sent a facsimile message to Mr. Howard informing him of the closing. *Hearing Tr.* at 49-50. However, again, Mr. Maloney failed to produce a copy of the fax at the evidentiary hearing, even though he knew that the issue would be addressed at the preliminary injunction hearing:

> Q.     Well, you knew that the closing of the Rockaway restaurant was one of
>        the issues dealt with in this evidentiary hearing today, correct?

13

A.    That's correct.

Q.    Did you bring with you a copy of this written communication with Mr. Howard that you claim you sent him about closing the Rockaway restaurant?

A.    No.

Q.    You claim you have that back in the office, correct?

A.    Yes.

*Hearing Tr.* at 49-50.  Again, the Court declines to credit Mr. Maloney's testimony in this regard.

In any event, however, Section XVI(A)(3)(a) of the Rockaway restaurant franchise agreement required -- not notice of the franchisee's unilateral closing -- but plaintiff's prior written approval.  Indeed, the agreement may be terminated when a franchisee "ceases to do business or voluntarily abandons Restaurant operation without prior written approval of Franchisor . . . ." *Exhibit I* attached to *Complaint*; *Hearing Tr.* at 21.  Defendants concede that no such prior written approval was granted prior to their closing of the Rockaway restaurant. *Hearing Tr.* at 22, 49-50.

Third, Mr. Maloney also conceded that defendants denied plaintiff's Franchise Business Consultant, Mr. Ratliff, access to the Scranton and Rockaway restaurants.  *Hearing Tr.* at 23. That denial constitutes a violation of Section X(D) of the franchise agreements.  *Exhibit A, I* attached to *Complaint*.  Plaintiff argues that this violation of the franchise agreement is particularly egregious because it prevented plaintiff from assuring food and service standards designed to serve the welfare of patrons.  *Plaintiff's Response to Defendants' Post-Hearing Brief* at 5-6.

14

Fourth, Mr. Maloney conceded that defendants had allowed insurance for the Scranton and Rockaway restaurants to lapse, in violation of Section VII(B) of the franchise agreements, which requires defendants to have insurance in "full force and effect during the entire term" of the franchise agreements. *Hearing Tr.* at 39-40, 46-7. Although Mr. Maloney testified that there is insurance currently in place on both the Scranton and Rockaway restaurants, his testimony is again undermined by his failure to offer any support whatsoever for that assertion. Moreover, Mr. Maloney could not recall the name of the insurance carrier providing the coverage, whether Damon's Restaurants, Inc., was named as an additional insured on the policies or whether copies of the polices had been provided to plaintiff. *Id.* at 46-7.

The evidentiary hearing provided clear and convincing evidence sufficient to persuade the Court that eventual success on plaintiff's claims is "highly probable," *See Colorado v. New Mexico,* 467 U.S. at 316, *i.e.*, that plaintiff has demonstrated a "strong likelihood of success on the merits" of its claims that defendants have acted in breach of the franchise agreements. *See Leary*, 228 F.3d at 736.

### 2. *Irreparable injury*

Plaintiff argues that it will suffer irreparable harm if a preliminary injunction does not issue. In the *October 7, 2005, Opinion and Order,* Judge Watson concluded that plaintiff had failed to demonstrate a threat of irreparable harm:

> Plaintiff's own inaction undermines any potential finding of irreparable harm. Plaintiff's witnesses testified to years of dealing with Defendants regarding alleged failure to comply with the Scranton and, recently, the Rockaway Franchise Agreement. Nonetheless, based upon Plaintiff's assertions, attempts were made to work with Defendants to rectify the alleged failures and shortcomings. Evidently, Plaintiff did not believe the issues it faced with respect to Defendants' franchises previously threatened it with irreparable harm because Plaintiff failed to seek more timely judicial intervention.

15

While the Court applauds Plaintiff's repeated attempts to resolve its disputes with Defendants prior to seeking court intervention, years of effort working to resolve repeated disputes belies the existence of irreparable harm.

However, since the issuance of the *October 7, 2005, Opinion and Order*, circumstances have again changed significantly.

Since the issuance of the *October 7, 2005, Opinion and Order*, plaintiff has not only vigorously attempted to vindicate its rights in this Court, but defendants have made no significant progress in remedying their defaults under the franchise agreements.  Indeed, defendants have failed to comply with either the *First Agreed Order* or the *Second Agreed Order*.  Defendants have made no royalty or production fund payments for a year and have failed to remedy their reporting deficiencies.

Since the earlier denial of plaintiff's request for interim injunctive relief, defendants have not only failed to demonstrate material progress in correcting their earlier defaults, but their additional defaults are more serious and pose a greater threat to plaintiff's ability to function as a franchisor.  Its representative has been denied access to the restaurants and the credible evidence suggests that defendants are serving unapproved food products.  Plaintiff convincingly argues that, "Damon's has expended substantial amounts of time and money developing and establishing its goodwill, reputation, trademarks, service marks and operating system[,]" which efforts are now in jeopardy because of defendants' defaults.  *Plaintiff's Response to Defendants' Post-Hearing Brief* at 9;  *Hearing Tr.* at 24-26.

The United States Court of Appeals for the Sixth Circuit has held that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)

16

(citing *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)).  Moreover, in cases such as this, courts have consistently held that a franchisor's inability to control the nature and quality of goods and services provided under its marks irreparably harms the goodwill associated with those marks and devalues them, thus warranting injunctive relief.  *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) ("McDonald's faces damage to its own reputation and loss of customers caused by the Robertsons' distribution of an allegedly inferior (and possibly dangerous) product held out to be McDonald's. Customers would believe that they were eating McDonald's sanctioned products when they consumed improperly cooked and unsanitarily maintained food products from the [franchisee's] store."); *Dunkin' Donuts Inc. v. Kashi Enters., Inc.*, 106 F. Supp.2d 1325, 1327 (N.D. Ga. 2000) ("plaintiff has an important interest in the uniformity of food specifications, preparation methods, quality and appearance, facilities and service of its franchisees. . . . Not only does the defendant's conduct place the plaintiff's trademarks and trade name at risk, but more importantly, it puts the public in danger of food contamination."); *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp.2d 146, 150-51 (N.D. N.Y. 2000) ("Thus, because Defendants are selling products under DDI's tradename that do not conform to DDI's quality, safety, and health specifications, it is likely that there will be confusion as to the source of Defendants' products or that the value of DDI's tradename will be diminished").

Plaintiff has presented customer complaints received by it about defendants' franchised restaurants.  *See Hearing Tr. Exhibits 93, 94*; *Exhibit C* attached to *Defendants' Post-Hearing Brief*.  The Court is convinced that plaintiff's inability to monitor the uniformity, quality and appearance of the foodstuffs served and the cleanliness and safety of the Scranton and Rockaway

restaurants has caused, and is currently causing, plaintiff to irreparably suffer the loss of

customer goodwill.  The damages from this loss of customer goodwill is now, and will continue

to be, difficult to compute.  Accordingly, the Court concludes that, absent injunctive relief,

plaintiff will suffer irreparable injury.

### 3.  *Harm to defendants*

Plaintiff argues that issuance of a preliminary injunction will not cause substantial harm

to defendants because the only harm would be pecuniary and would be remediable by money

damages.  *Plaintiff's Response to Defendants' Post-Hearing Brief* at 9.  Moreover, although

defendants' employees[4] might lose their employment, plaintiff contends that the employment of

its approximate 10,000 employees employed nationwide will be jeopardized by defendants'

defaults.  *Id.* at 10.

In the *October 7, 2005, Opinion and Order*, Judge Watson concluded that substantial

harm would inure to defendants if a preliminary injunction were issued "on the state of the

record" before the Court at that time, and that such harm should not be visited upon defendants

without the opportunity for the parties to more fully develop and present their respective cases.

*October 7, 2005, Opinion and Order* at 7.  In the intervening months, the parties have had the

opportunity to more fully develop their cases and the evidence strongly suggests that any harm to

defendants from the issuance of a preliminary injunction is attributable to their own repeated

breaches of the franchise agreements.  *See Dunkin' Donuts Inc. v. Kashi Enters., Inc.*, 106 F.

Supp.2d at 1327 (requiring defendants to comply with franchise agreements will not result in

---

[4]Defendants refer to 200 employees between the two restaurants.  Plaintiff assumes that,
with the closure of one restaurant, that number has been halved.

18

substantial harm).  Moreover, defendants have blatantly violated both the *First Agreed Order*

and the *Second Agreed Order*, evidencing the futility of ordering them, once again, to comply

with the franchise agreements.  Consequently, any harm to defendants because of their own

actions or inactions is more than outweighed by the harm to plaintiff flowing from defendants'

repeated breaches.

### 4.      Public interest

Plaintiff also argues that the public interest will be served by the requested injunctive

relief because the food products at the Scranton and Rockaway restaurants are not being

monitored for quality, consistency and safety.  In the *October 7, 2005, Opinion and Order*, the

Court noted that plaintiff's purported concern for the health and safety of the public was belied

by its accommodation of defendants' violations of the franchise agreements.  However, since the

issuance of the *October 7, 2005, Opinion and Order*, defendants appear to have disengaged

completely in their cooperation with plaintiff.

At the time that plaintiff's earlier request for injunctive relief was denied, defendants

were serving approved food, including approved meat products.  When defendants used

unapproved products, they utilized plaintiff's deviation request program.  *See, e.g., Defendants'*

*Exhibits 156-163* from *May 24, 2005 Evidentiary Hearing*.  By contrast, Mr. Maloney testified at

the June 27, 2006 evidentiary hearing that, since April 2006, defendants have obtained food

products from other Damon's restaurants–one as far away as North Carolina.  *Hearing Tr.* at 47.

Even if this testimony is credited, which this Court is disinclined to do, defendants offer no

insight into the quality control involved in the transfer of these food products to the Pennsylvania

and New Jersey restaurants, and, by their defaults under the franchise agreements, have

19

prevented the plaintiff from assuring that quality.  The public has a strong interest in trusting that the food served in a restaurant has been properly transported, stored and prepared.  Thus, the Court concludes that the issuance of the requested injunctive relief would serve the public interest.

### 5.    *Conclusion regarding injunctive relief*

As this Court stated in the *October 7, 2006, Opinion and Order*:

> Clearly a franchisor ought to have the right to enforce its franchise agreements. Moreover, Plaintiff is to be commended for its efforts to resolve potential breaches of its franchise agreements with Defendants.

*October 7, 2006, Opinion and Order* at 8.  The Court, however, found at that time that the evidence of record did not warrant the grant of injunctive relief.  However, the record currently before this Court is more than sufficient to warrant interim injunctive relief.

### C.  Plaintiff's Motion for a Finding of Contempt

In *Plaintiff's Motion for Contempt*, as supplemented, Doc. No. 91, 100, plaintiff asks that defendants be held in contempt for failure to abide by the Court's *First Agreed Order* and *Second Agreed Order*, Doc. Nos. 26, 38.  The Court assumes that plaintiff seeks a finding of civil contempt.

In a civil contempt proceeding, the burden is on the petitioner to "prove by clear and convincing evidence that the respondent violated the court's prior order."  *Glover v. Johnson,* 934 F.2d 703, 707 (6th Cir. 1991).  Good faith is not a defense in civil contempt proceedings. *Id.,* at

708.[5]  In making its determination, the Court must consider whether "defendants took all reasonable steps within their power to comply with the court's order," including "marshal[ing] their own resources, assert[ing] their high authority, and demand[ing] the results needed . . . in order to effectuate the course of action required by the [court's order]." *Id.* at 708.

For the reasons stated *supra,* the Court finds that defendants have failed to offer and serve only Damon's approved food products and have failed to accurately report to plaintiff all sales made at the Scranton and Rockaway restaurants and to pay to plaintiff all royalties and production fund fees based on gross sales at those restaurants, all as expressly required by the Court's prior orders, Doc. Nos. 26, 38. Further, defendants offer no persuasive justification for their failure to do so. Defendants in this case simply have not convinced the Court that they have taken all reasonable steps to comply with this Court's previous orders.  Indeed, defendants have repeatedly ignored the Court's orders and, even in the face of contempt proceedings, have failed to come into compliance with those orders.  The Court therefore concludes that a finding of contempt is appropriate and that the imposition of a civil sanction is warranted.


## III.  REMEDIES

For the reasons stated *supra,* the Court concludes that plaintiff has established a basis for some form of preliminary injunctive relief.  However, the relief actually sought by plaintiff, *i.e.*, essentially the final termination of the franchise agreements and enforcement of the legal consequences flowing therefrom, is tantamount to a  final resolution of the merits of plaintiff's

---

[5]Although willfulness is not an element of civil contempt, the state of mind of the contemnor is relevant to the consideration of sanctions. *Rogers v. Webster,* 776 F.2d 607, 612 (6th Cir. 1985).

claims and may be inappropriate at this stage of the proceedings.  *See University of Texas v. Camenisch,* 451 U.S. at 394; *WarnerVision Entertainment, Inc. V. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996).  The Court will therefore recommend the denial of *Plaintiff's Motion for Preliminary Injunction* at this stage of the proceedings.  This recommendation is made in light of the Court's recommended grant of *Plaintiff's Motion for Contempt*, and recommended sanction therefor, and is intended to be without prejudice to renewal should defendants persist in their defaults under the franchise agreements.

On the other hand, and as previously explained, plaintiff has established its right to relief on *Plaintiff's Motion for Contempt*, as supplemented, Doc. Nos. 91, 100..  The sanction for civil contempt  may be intended either to coerce future compliance with a court's order, *Shillitani v. United States*, 384 U.S. 364, 370 (1966), or to compensate for the injuries resulting from the noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191(1949).  *See also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("[A] contempt fine accordingly is considered civil and remedial if it . . . compensate[s] the complainant for losses sustained.");  *Glover v. Johnson*, 199 F.3d 310, 313 (6th Cir. 1999); *United States v. Bayshore Assocs., In.c*, 934 F.2d 1391, 1400 (6th Cir. 1991)("Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant.")

The Court recommends a sanction for defendants' demonstrated contempt that is intended to both coerce future compliance and to compensate plaintiff for defendants' past noncompliance.

It is therefore **RECOMMENDED** that *Plaintiff's Motion for Contempt*, as supplemented, Doc. Nos. 91, 100, be **GRANTED** and that defendants be found in civil contempt

of this Court's *First Agreed Order*, Doc. No. 26, and *Second Agreed Order*, Doc. No. 38, and

that, as a consequence of such contempt, defendants be ordered to affirmatively establish, within

thirty (30) days, that they have remedied the areas of noncompliance found in this *Report and

Recommendation* and, further, that they have compensated plaintiff for its costs and expenses,

including attorney's fees[6] incurred in connection with the *Plaintiff's Motion for Contempt*, as

supplemented, Doc. Nos. 91, 100, including the evidentiary hearing held on June 27, 2006.  It is

**FURTHER RECOMMENDED** that *Plaintiff's Motion for Preliminary Injunction*, Doc. No.

90, be **DENIED** without prejudice to renewal should defendants not affirmatively establish,

within thirty (30) days, that they have satisfied the recommended sanction for their civil

contempt.


If any party seeks review by the District Judge of the portion of this document that entails

the *Report and Recommendation*, that party may, within ten (10) days, file and serve on all

parties objections to the *Report and Recommendation*, and the part thereof in question, as well as

the basis for the objection thereto.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).  Responses to

objections must be filed within ten (10) days after being served with a copy thereof.  Fed. R. Civ.

P. 72(b).

The parties are specifically advised that failure to object to the *Report and

Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and

of the right to appeal the decision of the District Court adopting the *Report and*

---

[6]Plaintiff is directed to forthwith provide to defense counsel an itemized statement of its costs and expenses, including attorney's fees incurred in connection with the contempt proceedings.

*Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Harris v. City of Akron,* 20 F.3d

1396 (6th Cir. 1994); *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers,*

*AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).


August 30, 2006                                               s/Norah McCann King
Date                                                         Norah M<sup>c</sup>Cann King
                                                             United States Magistrate Judge