IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAMON'S RESTAURANTS, INC.,**

        **Plaintiffs,**

v.

**EILEEN K INC.,** *et al.,*

        **Defendants.**

Case No. C2 04 1028

JUDGE MICHAEL H. WATSON

Magistrate Judge Norah McCann King

## OPINION AND ORDER

This is a trademark action, 15 U.S.C. §1051, *et seq.*, in which Damon's Restaurants, Inc. (hereinafter "Plaintiff") alleges that Defendant Eileen K has acted in breach of the Franchise Agreements it has entered into with Plaintiff. Eileen K Inc., Dupont Airport Pub, Inc., and Trinity Road Restaurant Assoc. LLC., (hereinafter collectively "Defendants") deny liability and assert counterclaims alleging the wrongful termination of the Franchise Agreements, breach of their right of first refusal, civil conspiracy, breach of duty of good faith, tortious interference, promissory estoppel and unjust enrichment.

Pursuant to 28 U.S.C. § 636(b), this Court referred Plaintiff's Motion for Preliminary Injunction (Doc. 90) and Plaintiff's Motion for Contempt (Doc. 91) to United States Magistrate Judge King for evidentiary hearing and report and recommendation (Doc. 95). An evidentiary hearing was held on June 27, 2006, and based on that hearing and the parties' pre- and post-hearing briefs, the Magistrate Judge issued a

Report and Recommendation (Doc. 105), in which she recommended that Plaintiff's Motion for Contempt be granted and that Plaintiff's Motion for Preliminary Injunction be denied without prejudice to refiling should Defendants fail to affirmatively establish that they have satisfied the sanction imposed for their civil contempt.

Before the Court are the September 11, 2006, Objections of Plaintiff to Magistrate Judge King's August 30, 2006, Report and Recommendation (Doc. 109) (hereinafter "Plaintiff's Objections"), and the Objections of Defendants to same (Doc. 110) (hereinafter "Defendants' Objections"). Plaintiff filed a Response in Opposition to Defendants' Objections on September 21, 2006 (Doc. 111). Pursuant to 28 U.S.C. § 636(b)(1), this Court has conducted a *de novo* review of the Report and Recommendation (Doc. 105). For the reasons set forth below, Plaintiff's and Defendants' Objections are both **OVERRULED**. The Report and Recommendation is hereby **ADOPTED AND AFFIRMED**.

I.  **RELEVANT BACKGROUND**

On November 7, 1996, Plaintiff, as the franchisor, and Eileen K, Inc., as the franchisee, entered into a Franchise Agreement to operate a Damon's restaurant on Concorde Drive, Dupont, Pennsylvania (hereinafter "Scranton Restaurant"). (Exhibit A attached to Complaint). On August 27, 2002, plaintiff and Eileen K, Inc., entered into a Franchise Agreement for a Damon's restaurant at 11 Green Pond Road, Rockaway Township, New Jersey (hereinafter "Rockaway Restaurant"). (Exhibit I attached to Complaint).

On October 22, 2004, Plaintiff filed the Complaint in this action, seeking

injunctive and declaratory relief terminating the Franchise Agreements governing the Scranton and Rockaway Restaurants because Defendants allegedly repeatedly and successively acted in breach of the Agreements. Should the Franchise Agreements be terminated, Defendants will thereafter be required to cease operating as Damon's franchises and using Damon's trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

On October 29, 2004, Plaintiff filed its first motion for preliminary injunctive relief with regard to the Scranton Restaurant (Doc. 6). Then, on December 9, 2004, Plaintiff filed its second motion for injunctive relief with regard to the Rockaway Restaurant (Doc. 32). Certain aspects of the first two motions for injunctive relief were resolved by a November 17, 2004, Agreed Order and a December 27, 2004, Agreed Order issued by this Court (Docs. 26, 38).

After an evidentiary hearing and consideration of the parties' briefs, this Court issued an Opinion and Order on October 7, 2005, denying Plaintiff's first and second motions for injunctive relief (Doc. 81).

On May 9, 2006, Plaintiff filed a third motion for preliminary injunction (Doc. 90) and also filed a motion for contempt (Doc. 91). On June 27, 2006, Magistrate Judge King held an evidentiary hearing in which Carl Howard, President and Chief Operating Officer of Damon's International, testified on behalf of Plaintiff and Brian Maloney, a member of the partnership among Defendants, testified on behalf of Defendants. (June 27, 2006, Evidentiary Hearing Transcript (hereinafter "Hearing Tr.") at 9, 39). All parties were represented by counsel at the hearing.

On August 30, 2006, Magistrate Judge King issued a Report and

Recommendation (Doc. 105) on Plaintiff's Motion for Contempt and on Plaintiff's Motion for Preliminary Injunction. On September 11, 2006, Plaintiff and Defendants objected to the Report and Recommendation (Docs. 109, 110). Those objections are ripe for review.

## II. ANALYSIS

### A. Defendants' Objections

Defendants object to five specific portions of the Report and Recommendation.

#### 1. Defendants' failure to pay royalties and production fund fees.

Defendants object to Magistrate Judge King's conclusion that they breached the Franchise Agreements and violated this Court's Agreed Orders by failing to pay royalties and production fund fees to Plaintiff. (Defendants' Objections at 2-4). Although Defendants conceded at the evidentiary hearing and in Defendants' Objections that they have failed to pay royalties and production fund fees, they contend that they were relieved of this obligation through the verbal representations of Bill Burke, a representative of Plaintiff. (*Id.* at 2-3). In Defendants' Objections, Defendants complain that Mr. Maloney attempted to testify at the evidentiary hearing about this verbal representation, Magistrate Judge King characterized the proffered testimony as irrelevant, which "was clearly in error." (*Id.* at 3). In addition, Defendants now present testimony by way of affidavit intended to corroborate Mr. Maloney's assertion that he had been verbally granted permission to withhold "franchise fees." (Affidavit of Christina Moore[1] ¶ 19 attached to Defendants' Objections). After *de novo* review,

---

[1] Ms. Moore is a previous employee of a company owned by, or controlled by, Mr. Burke. Affidavit of Christina Moore ¶¶ 1-3.

4

however, this Court agrees with Magistrate Judge King's conclusion that the testimony related to a verbal agreement to vary the Franchise Agreements is irrelevant and finds her analysis of the issue correct:

> Mr. Maloney attempted to excuse this failure by testifying that he was verbally told by Bill Burke, a representative of plaintiff, that defendants need not pay royalties. *Hearing Tr.* at 50. Mr. Burke denies that he did so and in fact represents that he had no authority to do so. *Affidavit of Bill Burke* attached as *Exhibit B* to *Plaintiff's Motion for Preliminary Injunction*. **In any event**, however, Section XXIV of both franchise agreements provides that "no amendment, change or variance from this Agreement shall be binding on either party unless executed and delivered in writing." *Exhibits A, I* to *Complaint*; *Hearing Tr.* at 51-2.

(Report and Recommendation at 11) (emphasis added). Consequently, a verbal agreement under any circumstances simply cannot serve to vary the Franchise Agreements and any testimony related to it is inadmissible parole evidence. Even if the testimony relating to Mr. Burke's alleged verbal representation had been admitted, and even crediting the new affidavit testimony that Defendants present, Defendants still cannot explain how that testimony could disturb the Magistrate Judge's conclusion. Indeed, it is quite clear to this Court that, had the line of questioning relating to the alleged verbal agreement between Mr. Burke and Mr. Maloney been allowed, it would have had no impact on Magistrate Judge King's analysis and would leave her conclusion, with which this Court agrees, undisturbed.

Accordingly, Defendants' Objections to this portion of the Report and Recommendation are without merit and are therefore **OVERRULED**.

2. **Defendants' failure to report sales.**

In the Report and Recommendation, the Magistrate Judge concluded that

Defendants failed to report sales to Plaintiff as is required by the Franchise Agreements and by this Court's Agreed Orders. (Report and Recommendation at 12-13). Defendants contend that the portion of the "Report and Recommendation regarding the failure of Defendants to report sales is unwarranted under the facts of this case." (Defendants' Objections at 4). Defendants explain that, even though it later "turned out to be true" that the sales had not been reported, "Magistrate Judge King wholly ignores the justifiable reasons for this failure, *i.e.,* an inadvertent failure based on a "computer glitch" that resulted in little hardship to Plaintiff and that has now been cured. (*Id.*) Defendants' argument is unpersuasive.

At the evidentiary hearing, Mr. Maloney did not deny that Defendants had failed to report sales to Plaintiff in violation of the Franchise Agreements and of this Court's Agreed Orders. Instead, he testified that he was unaware that Plaintiff had not received the reports. (Hearing Tr. at 52). Mr. Maloney asserted that the sales reports had been prepared but he could not explain why Plaintiff had not received those reports. (*Id.* at 53). Mr. Maloney further testified that, had he been notified that plaintiff had not received the reports, he would "have had them sent out immediately." *Id.* Assessing the credibility of this testimony, Magistrate Judge King determined:

> The Court declines to credit Mr. Maloney's testimony considering that he had in fact been notified on April 11, 2006, that plaintiff had not received sales reports and yet did nothing to remedy the situation for over two months, *i.e.*, the time between the date Mr. Maloney claims he became aware of the reporting default (April 11, 2006) and the date he testified at the evidentiary hearing before this Court (June 27, 2006). *Id.*; *Hearing Tr. Exhibit 92.* Mr. Maloney even failed to bring the alleged reports to the evidentiary hearing.

(Report and Recommendation at 13). After conducting a *de novo* review of the record,

this Court finds Magistrate Judge King's analysis and credibility finding to be correct.[2]

Defendants also argue that, since the evidentiary hearing, sales reports have been issued. (Defendants' Objections at 4). Defendants, however, again offer no evidence whatsoever to support this assertion. On the other hand, Plaintiff offers evidence that although Defendants did in fact report some sales, those reports fail to fully conform to the requirements of the Franchise Agreements. (Affidavit of Carl Howard ¶¶ 3, 4 attached to Plaintiff's Response in Opposition to Defendants' Objections). Moreover, Defendants have made no sales reports for the Scranton Restaurant since June 18, 2006, or for the Rockaway Restaurant since June 11, 2006, which is evidence of their continued violations of the Franchise Agreements and this Court's Agreed Orders. (Id.).

Accordingly, this Court agrees with Magistrate Judge Kings' conclusion that Defendants failed to produce the required sales reports and that failure constitutes a breach of the Franchise Agreements and a violation of this Court's Agreed Orders. Accordingly, Defendants' Objections to this portion of the Report and Recommendation are **OVERRULED**.

### 3. Defendants' serving of unapproved foodstuffs.

Defendants object to the Magistrate Judge's conclusion that they served unapproved foodstuffs at the Scranton and Rockaway Restaurants. (Defendants'

---

[2] Moreover, it is simply impossible for the Magistrate Judge to have "wholly ignore[d]" Defendants' excuse for not reporting the sales when that information simply was not before her at the evidentiary hearing. That is, the "computer glitch" that Defendants now contend caused the reporting failure is mentioned for the first time only in Defendants' Objections: "*After the hearing*, Mr. Maloney learned that a computer glitch resulted in the failure to report sales figures at one store. Mr. Maloney then caused all sales figures at issue to be reported for both stores." (Defendants' Objections at 4)(emphasis added).

Objection at 4). In support of this objection, Defendants refer to Mr. Maloney's testimony that they served only approved food products. (*Id.* at 4-5). Defendants' objection is not well-taken.

After *de novo* review, this Court agrees with Magistrate Judge King's assessment of Mr. Maloney's testimony in this regard:

> Also, Mr. Maloney conceded at the evidentiary hearing that, because defendants failed to pay North Star Foodservice, North Star ceased delivering approved food products to defendants' restaurants in April 2006. *Hearing Tr.* at 47.
>
> However, Mr. Maloney insisted that defendants still serve only Damon's-approved foodstuffs by purchasing it from other Damon's restaurants, some located in states other than the states in which the Scranton and Rockaway restaurants are located. *Id.* at 40, 47-48. Notwithstanding the fact that this issue has featured prominently in the *Complaint*, in plaintiff's first and second motions for preliminary injunctions, in the *First Agreed Order* and in *Plaintiff's Motion for Preliminary Injunction*, defendants offered no documentation or other corroboration of this testimony. The Court places little credence in Mr. Maloney's uncorroborated testimony. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 500 (1984) (it is the district court's prerogative, and, indeed, its duty, to selectively discount testimony as it weighs conflicting viewpoints and adjudicates the facts).

(Report and Recommendation 11-12). In their Objections, Defendants persist in their failure to corroborate Mr. Maloney's testimony that Defendants are serving approved foodstuff.

Defendants also renew their argument regarding the public's interest in the service of unapproved foodstuffs by Defendants. This Court agrees with Magistrate Judge King's assessment and determination of this issue:

> In the *October 7, 2005, Opinion and Order*, the Court noted that plaintiff's purported concern for the health and safety of the public was belied by its accommodation of defendants' violations of the franchise agreements.

8

> However, since the issuance of the *October 7, 2005, Opinion and Order*, circumstances have again changed significantly . . . . In the interim, plaintiff has not only vigorously attempted to vindicate its rights in this Court, but defendants have made no significant progress in remedying their defaults under the franchise agreements. Indeed, defendants have failed to comply with either the *First Agreed Order* or the *Second Agreed Order*. . . .
>
> At the time that plaintiff's earlier request for injunctive relief was denied, defendants were serving approved food, including approved meat products. When defendants used unapproved products, they utilized plaintiff's deviation request program. *See, e.g., Defendants' Exhibits 156-163* from *May 24, 2005 Evidentiary Hearing*. By contrast, Mr. Maloney testified at the June 27, 2006 evidentiary hearing that, since April 2006, defendants have obtained food products from other Damon's restaurants—one as far away as North Carolina. *Hearing Tr.* at 47. Even if this testimony is credited, which this Court is disinclined to do, defendants offer no insight into the quality control involved in the transfer of these food products to the Pennsylvania and New Jersey restaurants, and, by their defaults under the franchise agreements, have prevented the plaintiff from assuring that quality. The public has a strong interest in trusting that the food served in a restaurant has been properly transported, stored and prepared. . . .
>
> Since the earlier denial of plaintiff's request for interim injunctive relief, defendants have not only failed to demonstrate material progress in correcting their earlier defaults, but their additional defaults are more serious and pose a greater threat to plaintiff's ability to function as a franchisor.

(Report and Recommendation at 16).

Accordingly, Defendants' Objections to this portion of the Report and Recommendation are without merit and are therefore **OVERRULED**.

### 4. Defendants' failure to allow Plaintiff to inspect the franchised restaurants.

Defendants object to Magistrate Judge King's finding that Defendants failed to allow Plaintiff's business consultants to inspect their franchised restaurants. (Defendants' Objections at 6-7). Defendants argue that:

9

> Magistrate Judge King fails to consider that at the time that [Plaintiff's representative] Mr. Ratliff sought entry, it had been ordered that day to day business communications between the two franchises and Damon's would be "made exclusively through Carl Howard, the Chief Operating Officer of Damon's and James Meaney, Damon's General Counsel, and not through other Damon's personnel." (Agreed Order ¶ 7). When Defendants informed Mr. Ratliff that he must be accompanied by Mr. Howard, they were merely attempting to comply with this Court's order.

(*Id.* at 7). Defendants' argument is simply misleading. Had Defendants accurately quoted the Agreed Order to which they refer, they would perhaps not have made this argument. The Agreed Order actually provides that "communications **from** Eileen K and/or Dupont, **to** Damon's, shall be made exclusively through Carl Howard, the Chief Operating Officer of Damon's, and James Meaney, Damon's General Counsel, and not through other Damon's personnel" (Doc. 26 at 2-3) (emphasis added). The quoted language upon which Defendants rely simply does not apply to Plaintiff's efforts to enforce its rights in this regard. Morever, to the extent that Defendants' misrepresentation of the terms of the Agreed Order was intentional, Defendants are cautioned to reconsider their argument.

Accordingly, Defendants' Objections to this portion of the Report and Recommendation are **OVERRULED**.

    **5.    Defendants' failure to maintain insurance.**

Defendants admit that they allowed the insurance coverage to lapse on the Rockaway and Scranton Restaurants, which is clearly a violation of the Franchise Agreements. Defendants, however, object to the Magistrate Judge's decision to discredit Mr. Maloney's testimony that the restaurants are currently properly insured:

> Magistrate Judge King's findings regarding this issue are in error. Indeed,

10

> Mr. Maloney testified that his restaurants are adequately insured. Magistrate Judge King chose not to believe Mr. Maloney, but the fact remains – Defendants' restaurants were insured and remain insured today. [No citation to evidence]

(Defendants' Objections at 8). A *de novo* review of the record, however, compels this Court to agree with Magistrate Judge King's analysis and conclusion on this issue:

> Mr. Maloney conceded that defendants had allowed insurance for the Scranton and Rockaway Restaurants to lapse, in violation of Section VII(B) of the franchise agreements, which requires defendants to have insurance in "full force and effect during the entire term" of the franchise agreements. *Hearing Tr.* at 39-40, 46-7. Although Mr. Maloney testified that there is insurance currently in place on both the Scranton and Rockaway Restaurants, his testimony is again undermined by his failure to offer any support whatsoever for that assertion. Mr. Maloney could not recall the name of the insurance carrier providing the coverage, whether Damon's Restaurants, Inc., was named as an additional insured on the policies or whether copies of the polices had been provided to plaintiff. *Id.* at 46-7.

(Report and Recommendation at 15). In Defendants' Objections, Defendants again offer absolutely no evidence of insurance coverage, nor do they provide any details regarding the alleged coverage. This Court, too, declines to credit Mr. Maloney's testimony and concludes that the record amply supports the Magistrate Judge's findings.

Accordingly, Defendants' Objections to this portion of the Report and Recommendation are **OVERRULED**.

## B.    Plaintiff's Objections

Plaintiff objects to the Report and Recommendation "only with respect to the fact that, given the factual findings and legal conclusions, the preliminary injunction sought should be granted[.]" (Plaintiff's Objections at 1).

11

After *de novo* review, this Court agrees with the Magistrate Judge's recommendation to deny Plaintiff's Motion for Preliminary Injunction. Because, as Magistrate Judge King explained, the relief sought in Plaintiff's Motion for Preliminary Injunction is tantamount to a final resolution of the merits of Plaintiff's claims, the grant of the requested relief is inappropriate at this stage of the proceedings. *See University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981); *WarnerVision Entertainment, Inc. V. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996).

Accordingly, Plaintiff's Objections are **OVERRULED**.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Objections (Doc. 109) and Defendants' Objections (Doc. 110) are **OVERRULED**. Magistrate Judge King's August 30, 2006 Report and Recommendation (Doc. 105) is hereby **ADOPTED AND AFFIRMED**.

Plaintiff's Motion for Contempt (Doc. 90) is **GRANTED**. Defendants are in **CIVIL CONTEMPT** of this Court's First Agreed Order (Doc. 26) and Second Agreed Order (Doc. 38). As a consequence of such contempt, Defendants are **ORDERED** to affirmatively establish with this Court, within thirty (30) days of the date of this Opinion and Order, that they have remedied the areas of noncompliance found in the August 30, 2006 Report and Recommendation and, further, that they have compensated Plaintiff for its costs and expenses as recommended in the Report and Recommendation and as set forth in Plaintiff's Statement of Attorney Fees Re: Contempt Proceedings (Doc. 108).

Further, Plaintiff's Motion for Preliminary Injunction (Doc. 90) is **DENIED** without

12

prejudice to renewal should Defendants fail to affirmatively establish within thirty (30) days of the date of this Opinion and Order that they have satisfied the sanction imposed for their civil contempt.

**IT IS SO ORDERED.**

*Nov. 13, 2006*
**DATE**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON
UNITED STATES DISTRICT JUDGE**

13